2012 ME 116

**Theresa L. ST. LOUIS et al.**

v.

**WILKINSON LAW OFFICES, P.C.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2012.

Decided: Oct. 11, 2012.

Charles E. Gilbert, III, Esq. (orally), Gilbert & Greif, P.A., Bangor, for appel-

**444**

lants Theresa L. St. Louis and Dale T. St. Louis.

James M. Bowie, Esq., and Hillary J. Bouchard, Esq. (orally), Thompson & Bowie, LLP, Portland, for appellee Wilkinson Law Offices, P.C.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Theresa L. St. Louis and Dale T. St. Louis appeal from a judgment entered in the Superior Court (Penobscot County, *Cuddy, J.*) in favor of Wilkinson Law Offices, P.C. (Wilkinson Law) on their negligent misrepresentation claim. The judgment for Wilkinson Law was entered after the close of the St. Louises' case in a nonjury trial.

[¶ 2] The St. Louises argue that the court erred in finding that they had failed to prove their claim of negligent misrepresentation because (1) an attorney from Wilkinson Law, acting as a closing agent, effectively made misrepresentations concerning the terms of a prepayment penalty when the attorney displayed, read, and quoted a summary document that erroneously stated the prepayment penalty terms, and (2) the attorney expanded upon the misrepresentations by participating in a discussion at the closing concerning the prepayment penalty. The St. Louises also argue that, as a matter of law and of policy, any closing agent, whether an attorney or not, must be held to a standard of knowing and understanding the contents of closing documents, given the "public importance" of closings.[1] We affirm the judgment.

I. CASE HISTORY

[¶ 3] Dale T. St. Louis acquires and develops or improves real estate for a living. As part of his business, Dale and his wife, Theresa, had participated in twenty to twenty-five closings related to construction financing or sale of property prior to December 2007. None of those transactions had involved commercial loans and, to Dale's knowledge, none had involved notes containing prepayment penalties. The St. Louises typically participated in closings without an attorney present to represent them and had never had a problem in the past.

[¶ 4] In 2007, a mortgage broker from Northstar Mortgage contacted Dale offering to help him acquire funding or refinancing for projects. This mortgage broker had worked with Dale on refinancing two residential loans, neither of which included prepayment penalty terms. These residential loans closed without issue. A representative from Wilkinson Law had conducted those closings. The St. Louises did not select Wilkinson Law to perform this service, although Wilkinson Law's fee was paid through the closing costs paid by the St. Louises.

[¶ 5] Dale wanted to obtain a loan for a third property. Northstar Mortgage proposed several options, one of which the mortgage broker represented as including a prepayment penalty if the loan, a commercial loan in the amount of $273,000, was repaid early. The lender for this loan was Silver Hill Financial, LLC. Dale agreed to the Silver Hill loan option, understanding from the broker that the prepayment penalty would result in little more than a $13,000 penalty when he re-

---

1. In what appears to be a secondary argument, the St. Louises also assert that an attorney, acting as a closing agent, could be governed by Restatement (Third) of the Law Governing Lawyers §§ 51, 56 (2000). This argument was not raised at trial, and we do not address it. *See Teel v. Colson*, 396 A.2d 529, 533–34 (Me.1979).

paid the loan, which he planned to do as quickly as possible after construction was complete and the property sold.

[¶ 6] The St. Louises attended the closing on the Silver Hill loan, which took place at their home on December 6, 2007. The Northstar Mortgage mortgage broker with whom Dale had worked on the loan also attended the closing. The St. Louises received no closing documents in advance of the closing and did not seek advice of counsel beforehand. As with the two previous closings, Wilkinson Law was engaged by a party other than the St. Louises to act as the settlement agent and was paid as part of the closing costs. Sarah Wilkinson, an attorney from Wilkinson Law, conducted this closing.[2]

[¶ 7] Along with the closing documents, Sarah Wilkinson had before her a document, apparently prepared by Silver Hill, entitled "Funding Instructions."[3] There is no evidence that Wilkinson Law prepared the Funding Instructions. The Funding Instructions contained a section entitled "Funding Details." At the closing, Sarah Wilkinson said something to the effect that, "these are my closing instructions," and she read each of the items stated in the Funding Details to the St. Louises. The last of the items in the Funding Details was "Prepayment terms: 5% of unpaid principal balance if prepaid during first 5 yrs." Dale believed that this term was consistent with what the mortgage broker had said the prepayment penalty would be.

[¶ 8] Because Theresa was unaware of any prepayment penalty provision, the mortgage broker and Dale talked about what the prepayment penalty meant, and Dale told Theresa that he was aware of it and that it was fine. Dale later testified at trial that he, the mortgage broker, and Sarah Wilkinson said "it was a five percent penalty and would be thirteen thousand dollars." Dale admitted, however, that he did not know exactly what Sarah Wilkinson said during the conversation, as opposed to what he and the mortgage broker, who did the majority of the talking, had said. Sarah Wilkinson apparently did agree that "five percent was thirteen thousand and change." Wilkinson also stated that a prepayment penalty is "standard procedure" in commercial loans.

[¶ 9] Because they believed it was a routine closing, the St. Louises then signed the closing documents, including the promissory note, without reading the documents, despite having had the opportunity to do so. Sarah Wilkinson did not specifically point out the prepayment penalty provision in the promissory note before the St. Louises signed the note, but instead handled the closing documents in the same manner as in other closings the St. Louises had attended. The prepayment penalty stated in the promissory note was not consistent with the five percent prepayment penalty stated in the Funding Details.[4]

[¶ 10] When the St. Louises subsequently prepared to sell the property and pay off the loan in early 2009, the prepayment penalty was not approximately $13,000 as expected, but was instead $100,473. The St. Louises incurred additional damages of $11,269. The St. Louis-

---

2. The record indicates that Sarah Wilkinson was licensed to practice law in Maine when the transaction at issue in this case occurred.

3. Although one could infer from the record that the Funding Instructions were prepared by the lender, Silver Hill Financial, LLC, the trial court did not make a finding in this regard.

4. The St. Louises executed a second promissory note in January 2008 to replace the one they signed on December 6, 2007, which corrected only the date of the note's maturity.

es filed a complaint against Wilkinson Law and Stephen F. Jordan, LLC, d/b/a Northstar Mortgage ("Northstar"), in February 2010. Subsequently, the St. Louises filed an amended complaint, alleging, as relevant here, negligent misrepresentation against Wilkinson Law. The St. Louises filed no action against Silver Hill Financial. The court held a one-day nonjury trial in September 2011.

[¶ 11] At the close of the St. Louises' case, both Wilkinson Law and Northstar moved for judgment as a matter of law pursuant to M.R. Civ. P. 50(d). The court denied Northstar's motion and granted Wilkinson Law's motion. In findings stated on the record, the court indicated that Wilkinson Law did not make misrepresentations during the closing or otherwise affirmatively state what the closing documents actually contained. Instead, the court found that Wilkinson Law had accurately recited what was in the Funding Details. The court also stated that "[i]n light of the burden under Rule 50 and giving all inferences in this matter in favor of Plaintiff, nonetheless, the [c]ourt is persuaded that, as to the Count One as against the Wilkinson Law Office the burden has not been met, and the motion is granted."

[¶ 12] The trial continued with respect to Northstar, and the court entered a judgment in favor of the St. Louises against Northstar. The court concluded that Northstar (1) breached a contractual agreement with the St. Louises to obtain financing that included a five percent prepayment penalty, and (2) engaged in negligent misrepresentation with respect to the terms of the prepayment penalty.[5] The court awarded the St. Louises $98,142.67 in total damages, plus interest and costs. No appeal was taken from the judgment against Northstar.[6]

[¶ 13] The court's judgment further stated that it had been entered at trial in favor of Wilkinson Law "for failure to prove substantive elements of the claim, including that a misrepresentation was made." After final judgment was entered, the St. Louises brought this timely appeal from the judgment entered in favor of Wilkinson Law.

## II. LEGAL ANALYSIS

### A. Standard of Review

[¶ 14] The standard of review that applies when reviewing a judgment entered on a motion for judgment as a matter of law, pursuant to a M.R. Civ. P. 50(d), in a nonjury trial depends on whether the trial court made findings of fact. *Nightingale v. Leach*, 2004 ME 22, ¶ 2, 842 A.2d 1277. "When the trial court has entered the judgment solely on the sufficiency of the evidence, without determining the facts, the judgment is reviewed as though it were entered pursuant to M.R. Civ. P. 50(a)," in which case we consider "the evidence and every justifiable inference from the evidence in the light most favorable to the party against whom the judgment was entered." *Id.*

[¶ 15] When the trial court has entered the judgment at the close of the plaintiff's case after making findings of fact, we accept those findings unless they are clearly erroneous. *Id.*; *Smith v. Welch*, 645 A.2d 1130, 1131–32 (Me.1994) ("When the trial court grants the Rule 50(d) motion after resolving factual issues against the plaintiff, we are not bound to

---

5. The court found for Northstar on the St. Louises' claim for breach of fiduciary duty.

6. At oral argument, counsel represented that the judgment against Northstar will not be paid because Northstar is no longer in business.

view the evidence in the light most favorable to the plaintiff."); *Wyman v. Osteopathic Hosp. of Me., Inc.*, 493 A.2d 330, 333–34 (Me.1985).

[¶ 16] As with any other appeal, on issues on which the plaintiff had the burden of proof, the clear error standard of review requires that, to overturn a finding that a plaintiff has failed to prove one or more elements of a claim, the plaintiff must demonstrate that a contrary finding is compelled by the evidence. *Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79; *Westleigh v. Conger*, 2000 ME 134, ¶ 12, 755 A.2d 518.

[¶ 17] Here, at the close of the St. Louises' case, the court resolved factual issues against them on the record. *See Smith*, 645 A.2d at 1132 (holding that the trial court acted as a fact-finder pursuant to Rule 50(d) by finding that the plaintiff failed to meet his burden of proof on an essential element of his claim); *see generally Wyman*, 493 A.2d at 333–34 & n. 5. Accordingly, we apply the clear error standard of review with respect to all facts found, and will affirm those findings, even if evidence in the record might support alternative findings, unless a contrary finding is compelled by the record. *Handrahan*, 2011 ME 15, ¶ 13, 12 A.3d 79.

## B. Negligent Misrepresentation Claim

[¶ 18] We have discussed the tort of negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout*, 568 A.2d 829, 830 (Me.1990) (adopting the formulation of the tort as stated in the Restatement (Second) of Torts § 552(1) (1977)); *accord Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771.

[¶ 19] Whether a party made a misrepresentation and whether the opposing party justifiably relied on a misrepresentation are questions of fact. *See McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 53 (Me.1996); *Devine v. Roche Biomedical Labs., Inc.*, 637 A.2d 441, 446 (Me.1994). Additionally, liability only attaches if, when communicating the information, the party making the alleged misrepresentation "fails to exercise the care or competence of a reasonable person under like circumstances," an inquiry that is likewise for the fact-finder. *Rand*, 2003 ME 122, ¶ 13, 832 A.2d 771. "[T]he defendant's knowledge is largely immaterial for negligent misrepresentation"; "the fact-finder's primary task is to ascertain whether the defendant's conduct was reasonable." *Id.*

[¶ 20] In this case, the court found the following facts, which we review for clear error: (1) there is no indication in the record as to who prepared the Funding Details; (2) Wilkinson Law, acting as the closing agent, simply made a "recitation" and a "representation and an affirmation as to what was on the summary sheet"; (3) in this regard, Wilkinson Law made an "accurate statement"; (4) the court was "not at all persuaded ... that the statements made on behalf of the Wilkinson Law Office represented an affirmation as to what the documents contained or didn't contain," despite finding that "the information contained in the loan documents themselves were inconsistent with what's on the summary sheet." Ultimately, the court was "persuaded that, as to the [negligent misrepresentation count] against the Wil-

kinson Law Office the burden has not been met."

[¶ 21] The court's finding that Wilkinson Law did not make a misrepresentation, given that its agent, who happened to be an attorney, was merely, and accurately, stating the information from the Funding Details, is supported by competent record evidence. *See Smith,* 645 A.2d at 1132. In describing the role that the Wilkinson Law attorney played at the closing, the St. Louises consistently testified only that she stated the terms contained on the Funding Details sheet.

[¶ 22] The St. Louises contend that the Wilkinson Law attorney was obligated to provide full and fair disclosure as to matters on which she chose to speak. We do not need to address whether this closing agent, who happened to be an attorney, but who was an agent of another party and who did not represent the St. Louises, was under such an obligation under the facts of this case. The St. Louises only claimed misrepresentation. The evidentiary record supports the court's finding that the attorney only addressed what information the Funding Details contained and not whether the underlying documents that the Funding Details purportedly summarized actually contained that information. There is no dispute that the attorney fairly disclosed the terms stated in the Funding Details.

[¶ 23] Additionally, the St. Louises contend that the Wilkinson Law attorney expanded upon the misrepresentation that the terms of the loan included a five percent prepayment penalty by participating in a discussion at the closing. However, the court did not make that finding, and the record does not support that claim.

To the extent that the Wilkinson Law attorney participated in a conversation, in response to Theresa's inquiry about the prepayment penalty, the record shows that the only specific comment attributable to the attorney was that prepayment penalties are standard in a commercial loan situation, which is not an alleged misrepresentation in this appeal. Additionally, contrary to the St. Louises' characterization, the record does not indicate that the attorney affirmatively stated "that the amount of exposure" to the St. Louises from the prepayment penalty was "just over $13,000." The record actually indicates that the attorney agreed with others at the table that "five percent was thirteen thousand and change," which is simply a correct mathematical calculation.

[¶ 24] Because the court's factual finding that Wilkinson Law did not make a misrepresentation is supported by competent record evidence and a contrary finding is not compelled by the record, the St. Louises have not met their burden of persuasion on appeal. Accordingly, the court did not err in entering a judgment in favor of Wilkinson Law.[7]

The entry is:

Judgment affirmed.

---

7. Because we affirm the judgment on the narrow grounds stated above, we do not reach the St. Louises' policy-based contentions.