MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2015 ME 49
Docket:      Han-14-321
Argued:      April 8, 2015
Decided:     May 5, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

ROBERT L. RICE et al.

v.

JAMES C. COOK et al.

GORMAN, J.

[¶1]  Robert L. Rice and Carol P. Rice appeal from a judgment entered by the Superior Court (Hancock County, *Anderson, J.*) granting James C. Cook and Carol Greenleaf-Cook injunctive relief and monetary damages.  The Rices contend that (1) the court erred in finding that the parties did not reach an agreement regarding their common boundary line, (2) the court erred in finding that the Rices' fences were "unnecessarily high" pursuant to 17 M.R.S. § 2801 (2014) or "unreasonably interfered" with the Cooks' use and enjoyment of their property pursuant to a common law theory of nuisance, and (3) the court abused its discretion in enjoining the Rices from building a fence of any height along a portion of their boundary with the Cooks.  We affirm the judgment.

## I. BACKGROUND

[¶2]   On February 24, 2012, Robert L. Rice and Carol P. Rice filed a complaint in the Superior Court against their neighbors, James C. Cook and Carol Greenleaf-Cook, alleging breach of a contract among the parties regarding their shared boundary line, trespass, nuisance, and timber trespass, and seeking a declaratory judgment, injunctive relief, and punitive damages.  On June 5, 2012, the Cooks counterclaimed, alleging nuisance, trespass, and breach of contract based on a previous settlement agreement between the parties, and seeking declaratory judgment.  On December 30, 2012, the court held a jury-waived trial.

[¶3]   In its judgment, the court found the following facts, which are supported by competent record evidence.  The Rices and Cooks are neighbors on Green Lake in Dedham.  In 2001, the Rices built a garage on their property, and the Cooks tore down an old camp and built a house where the camp previously stood.  Both parties indicated on their respective building permit applications that their proposed structures met the ten-foot setback requirement.  Nevertheless, neither party knew the location of the boundary nor commissioned a survey until 2008.

[¶4]   Although the Rices asserted that they and the Cooks had reached an agreement on the location of the common boundary, the Cooks denied any such agreement, and the parties never altered the property descriptions in their deeds.  In

addition, the Rices did not present at trial any metes and bounds description, or any other writing, demonstrating their version of the line.

[¶5] Even after constructing their garage, the Rices stored full trash bags, trash barrels, ladders, and construction materials outside of the northern side of the garage, making these unsightly items highly visible from the Cooks' porch. In 2008, the Cooks commissioned a survey of their land and subsequently built a six-foot high fence on their property, along the length of the Rices' garage, to shield the trash from their view. This fence, which is two feet from the boundary shown on the Cooks' survey, is approximately four feet from the Rices' garage.

[¶6] Apparently displeased by the fence, the Rices built a fence on their side of a shared right-of-way behind the parties' properties. This fence consists of segments that, although individually are no more than six feet in height, are placed in a manner that causes a significant portion of the fence to be more than six feet above the ground. The Rices then placed ladders, trash containers, and other materials on the narrow portion of their property that is outside this fence, in plain view of the Cooks' property. Although Robert Rice testified that he built this fence because the Cooks had cut down some trees between the properties that had provided a visual screen, the court found this testimony was "grossly exaggerated." This fence is pictured below.

4



[¶7]  Robert Rice then constructed a second fence, from the side of his garage towards the lake.  This fence, which partially obstructs the Cooks' lake view, is also erected so that some portions are over six, and up to twelve, feet tall. This fence is pictured below.



[¶8] In addition, the Rices play loud music from their garage at all hours that can be heard outside. The Rices also have installed security cameras on their property, at least two of which are pointed directly over the Cooks' fence toward the Cooks' house and yard.

[¶9] Based on these facts, the court concluded, inter alia, that the Cooks and Rices never "actually reached an agreement" regarding the location of the common boundary and, therefore, the Cooks did not breach a contract concerning the location of the boundary. In addition, the court concluded that the Rices created a common law nuisance by their acts of pointing surveillance cameras directly at the Cooks' home from a close distance; playing loud music at all hours; building both fences; and placing trash, ladders, and other items on the Cooks' side of the Rices' fence. The court also concluded that the Rices' fences were "spite fences" as defined by 17 M.R.S. § 2801 (2014) and, as such, were a nuisance.

[¶10] The court issued an injunction requiring that (1) "[t]he fences are either to be removed or reconstructed in a manner such that no part of the fence is more than 6' from the ground;" (2) "[i]f the fence closest to the lake is reconstructed, it shall be no closer to the lake than the present location of the third support post from the lake;" (3) "[n]o surveillance camera may be pointed in a manner such that defendant's property east of the right of way is within range of the camera;" (4) "[n]o personal property or trash may be placed on the north

6

(defendant's) side of the fence to the west of the right of way if it is reconstructed;" and (5) "[t]he plaintiffs are not to play music outside at an unnecessarily high volume and it can be played only while a plaintiff, family member and/or guest is outside to listen to the music." Additionally, the court awarded the Cooks $5,000 in damages. The Rices timely appealed those portions of the judgment concerning the location of the boundary, the finding that the fences constituted nuisances, and the limitations on the Rices' ability to fence their property.

## II. DISCUSSION

### A. Breach of Contract

[¶11] The Rices first argue that the court erred in finding that the Rices and Cooks never reached an agreement regarding their shared boundary line. "A contract exists when the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite." *McClare v. Rocha*, 2014 ME 4, ¶ 16, 86 A.3d 22 (quotation marks omitted). We review for clear error a trial court's determination of whether a contract exists. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041. Clear errors exists when

> (1) there is no competent evidence in the record to support [the trial court's determination], or (2) it is based on a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the

believable evidence that it does not represent the truth and right of the case.

*Remick v. Martin*, 2014 ME 120, ¶ 7, 103 A.3d 552 (quotation marks omitted).

[¶12]  Here, the court found that the parties did not agree to a common boundary line, or memorialize any sort of metes and bounds description or any other writing of their agreement.  This finding is supported by the testimony of James Cook, who stated that he and Robert Rice never had any specific conversations about the boundary line, and that he did not know where the boundary line was until he had a survey completed in 2008.  Although Robert Rice testified that he and James Cook did come to an agreement in 2001 regarding their common boundary line, the court was free to credit either witness's testimony.  *See State v. Ahmed*, 2006 ME 133, ¶ 21, 909 A.2d 1011 ("[T]he court is free to determine which witnesses to believe and which evidence to accept or reject as trustworthy or untrustworthy.").  Because the finding is based on evidence that the court did not "misapprehend," and because the evidence presented does not convince us that the finding "does not represent the truth and right of the case," we affirm the court's finding that the parties never reached an agreement as to the common boundary line.[1]

---

[1]  The Rices also argue in this appeal, for the first time, that they are entitled to recover pursuant to a theory of promissory estoppel.  Because the Rices are raising the issue of promissory estoppel for the first time in their brief to us, we decline to consider it in this appeal.  *Bayview Loan Servicing, LLC v. Bartlett*,

8

B.    Spite Fence Statute

[¶13]   The Rices next argue that the court erred in its factual findings that the Rices' fences were "unnecessarily high" as that term is used in 17 M.R.S. § 2801 (2014) and "unreasonably interfered" with the Cooks' use and enjoyment of their property pursuant to a common law theory of nuisance.  "We review a trial court's factual findings for clear error and its application of the law to those facts de novo."  *Peters v. O'Leary*, 2011 ME 106, ¶ 15, 30 A.3d 825.

[¶14]   Spite fence jurisprudence is sparse but long-standing.  "[I]t is plain that the right to use one's property for the sole purpose of injuring others is not one of the immediate rights of ownership."  *Rideout v. Knox*, 19 N.E. 390, 391 (Mass. 1889) (Holmes, J.) (discussing Massachusetts's spite fence statute).  Title 17 M.R.S. § 2801, the spite fence statute, deems "[a]ny fence or other structure in the nature of a fence, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property" a nuisance.  By its plain meaning, "unnecessarily" means "not by necessity" or "to an unnecessary degree."  Webster's New International Dictionary (3rd ed. Merriam Webster 2002).

---

2014 ME 37, ¶ 16, 87 A.3d 741 (holding that an issue brought up for the first time on appeal was not properly preserved); *see also Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 30, 16 A.3d 137.

[¶15]  Recently, in *Peters v. O'Leary,* we evaluated whether a boundary made of many large trees created a nuisance pursuant to section 2801. 2011 ME 106, ¶¶ 17-18, 30 A.3d 825.  Although our focus in *Peters* was whether trees could be used to create a spite fence, *Peters* does provide insight into the word "unnecessarily."  *Id.*  In *Peters*, formerly cordial neighbors developed a contentious relationship after one family built a new home.  *Id.* ¶ 3.  In the midst of their disagreements, the other neighbor learned that, once vegetation was planted on his property, a town ordinance would preclude its removal.  *Id.*  Armed with this information, and without notifying his neighbors, he planted sixty-one arborvitae and thirteen pear trees on his property in a manner that was "designed to provide a continuous barrier between the properties."  *Id.* ¶ 4.  The trial court found that the dominant reason for this massive planting "was to punish the [Peterses] by significantly reducing their prized view of the Atlantic."  *Id.* ¶ 7 (quotation marks omitted).  We affirmed this finding and the court's determination that, without that malicious motive, the neighbor would not have created the fence.  *Id.* ¶¶ 15-18.  We explicitly determined both that the number and size of plantings supported the court's finding of a dominantly malicious motive, and those same facts, coupled with the dominantly malicious motive, provided the basis for the court's "unnecessarily" finding.  *Id.* ¶¶ 13-18; *see also Healey v. Spaulding*, 104 Me. 122,

124-25, 71 A. 472 (1908) (categorizing a fence as "extraordinary and unnecessary" based on its twelve-foot height).

[¶16]  Here, the Rices argue that the height and nature of their fences were necessary due to the "sloped and rocky" nature of the land, and that the court heard "uncontroverted evidence that the height and structure of the fences were necessary."  Although the court did hear testimony from Robert Rice explaining where, when, and how he built the fences, the court also had numerous photographs depicting the fences and was in the best position to determine whether Robert Rice's explanations were credible.  *See Handrahan v. Malenko*, 2011 ME 15, ¶ 14, 12 A.3d 79 ("A court is not required to believe the testimony of any particular witness, expert or otherwise, even when the witness's testimony is uncontradicted.") (citation omitted) (quotation marks omitted).  Despite the Rices' assertions, the court found that, in building the fences, the Rices intended to annoy the Cooks and interfere with their use of their property.  This supports the court's finding that the fences "unnecessarily" exceeded six feet in height.[2]

C.     Remedy

[¶17]    Finally, the Rices argue that the court abused its discretion by ordering that "[i]f the fence closest to the lake is reconstructed, it shall be no closer

---

[2]  Because we conclude that the court correctly determined that the Rices' fences were spite fences pursuant to 17 M.R.S. § 2801 (2014), we do not reach the issue of whether the fences constituted a common law nuisance.

to the lake than the present location of the third support post from the lake." "We review the issuance of an injunction for an abuse of discretion." *Eaton v. Cormier*, 2000 ME 65, ¶ 4, 748 A.2d 1006; *see also Peters*, 2011 ME 106, ¶¶ 8, 19, 30 A.3d 825 (finding that the court crafted a "fair and limited injunction" when it ordered a party to remove "the first three pear trees at one end of the row and the last six pear trees at the other end of the row within sixty days" and enjoined the party from installing any similar structure that could impair the other party's view of the ocean in the future).

[¶18] Here, the court's remedy was fair, limited, and based directly on its factual findings. Based on its determination that the Rices built both fences with the intent to annoy the Cooks and to interfere with the Cooks' use of their property, the court limited the Rices' actions only to the extent necessary. In so doing, it did not abuse its discretion.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Edmond J. Bearor, Esq., and Jonathan P. Hunter, Esq., Rudman Winchell, Bangor, for appellants Robert L. and Carol P. Rice

Daniel A. Pileggi, Esq., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for appellees James C. Cook and Carol Greenleaf-Cook

**At oral argument:**

Jonathan P. Hunter, Esq., for appellants Robert L. Rice and Carol P. Rice

Daniel A. Pileggi, Esq., for appellees James C. Cook and Carol Greenleaf-Cook