MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 18
Docket:       Han-18-196
Argued:       December 11, 2018
Decided:      January 29, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## JOHN SWEET II

v.

## CARL E. BREIVOGEL et al.

HUMPHREY, J.

[¶1]  In this appeal involving a dispute over payment for the construction of a traditional timber frame home, we consider the connection between the Home Construction Contracts Act (HCCA) and the Unfair Trade Practice Act (UTPA), take this opportunity to underscore the significance of the statutory requirement that construction contracts be formalized in writing, and affirm the judgment. *See* 5 M.R.S. § 213(1), (2) (2017); 10 M.R.S. §§ 1487, 1490 (2017).

## I. BACKGROUND

[¶2]  The following facts are drawn from the court's judgment and are supported by competent evidence in the record.  *See Gravison v. Fisher*, 2016 ME 35, ¶ 3, 134 A.3d 857.

2

[¶3] John Sweet II is a sole proprietor who specializes in the construction of traditional timber frame homes, which involve a high level of labor, time, and craftmanship.  In February 2013, Carl E. and Elizabeth A. Breivogel contacted Sweet through his construction-business website and inquired about building "an enclosed, [weathertight] frame home" on land they own on Mount Desert Island.

[¶4] In March 2013, the Breivogels traveled to Maine and met with Sweet at his self-constructed timber frame home.  During that visit, the Breivogels viewed Sweet's workshops as well as two other timber frame homes that Sweet had constructed.  While the parties did not reach any agreements that day, Sweet did provide the Breivogels with some information about the relative costs of the homes they visited.  Specifically, he told the Breivogels that it would cost approximately $500,000 to build a 28' x 30' completed home like his and $400,000 to construct the 32' x 32' home they visited that was little more than a "dried shell" or "weathertight" home.[1]

---

[1]  In their testimony, Sweet and his son, John Sweet III, explained that a "dried shell" or "weathertight" home refers to a building that has a traditional timber frame, a roof, and exterior walls, but does not have electricity, plumbing, fixtures, or completed rooms.  Because cutting into the timbers after the frame is complete compromises the home's structure and integrity, a dried shell is often built with an overall plan for the completed home in mind.  In contrast, a completed home ready for occupancy includes features such as a kitchen, functioning bathrooms, light fixtures, and internal walls for rooms.

[¶5]  After that meeting, the parties continued to communicate via email. In one exchange dated March 26, 2013, the parties began to discuss the costs associated with building a saltbox style[2] timber frame home.  The Breivogels asked Sweet whether it would be possible to build a home of this style for $275,000, not including the septic system for which the Breivogels would make other arrangements.  Sweet responded that it was possible, but difficult to be certain at that early stage of the discussion because "the devil[']s in the details."

[¶6]  From that point forward, the parties did not share the same understanding of the scope and cost of the work Sweet was to perform.  Sweet believed that the Breivogels wanted him to construct an enclosed, weathertight timber frame home—including only a frame, walls, roof, insulation, doors, windows, chimney, and exterior shingles.  In contrast, the Breivogels believed that they had requested a fully completed home, ready for occupancy, costing no more than $275,000.

[¶7]  In April 2013, the Breivogels authorized Sweet to begin construction; however, the parties never signed a contract.  When the Breivogels inquired when the parties would formalize the terms of the project,

---

[2]  A saltbox style home is "a house . . . having two stories in front and one at the rear, and a gable roof with a much longer slope at the rear." *Saltbox*, Webster's New World College Dictionary (5th ed. 2016).

4

Sweet insisted that he had never signed a written contract in over thirty years of business. The parties did, however, arrange that the Breivogels would be billed biweekly and pay for all materials and any labor at $32 an hour.

[¶8] Sweet and his team began construction of a dried shell structure in the summer of 2013 and completed the work in December of that year. Throughout the project, Sweet sent numerous emails to the Breivogels containing photographs depicting the progress on their home. He also provided biweekly invoices; despite these frequent communications, however, Sweet's overall record-keeping process throughout the project was highly informal.

[¶9] After December, both parties understood that work on the home would progress beyond the dried shell phase. At that point, the Breivogels determined, without informing Sweet, that they would have Sweet continue to work on the project, but would initiate legal action against him after they obtained a certificate of occupancy. They intended to seek damages for payments made in excess of $275,000. The Breivogels continued to pay Sweet until May 4, 2014. Construction of the home was completed and the Breivogels received their certificate of occupancy on May 15, 2014.

[¶10]  In total, Sweet billed the Breivogels $602,250.98 for materials and services.  The Breivogels had paid $601,195.75.  After the Breivogels refused to tender any further payments, Sweet placed a $51,953.94 lien on the home for unpaid labor and brought this action against the Breivogels for that amount plus interest.[3]  The Breivogels asserted counterclaims for negligence, breach of contract, fraud, negligent misrepresentation, breach of the implied warranty of workmanship, and a violation of the UTPA.

[¶11]  The Superior Court (Hancock County, *R. Murray, J.*) concluded that Sweet was entitled to the money that he had already received from the Breivogels for the home under the theory of quantum meruit; however, the court also determined that Sweet had actually overcharged the Breivogels by $640.77 for the work performed by a tiler.  With respect to the Breivogels' counterclaims, the court concluded that they failed to establish that Sweet was negligent, had breached any contractual obligation to perform in a workmanlike manner, or had breached any implied warranty relating to workmanship.  It also determined that Sweet did not commit fraud or negligent misrepresentation.  However, the court did find that Sweet violated the HCCA

---

[3]  Although the record is sparse with regard to the basis for this amount, Sweet testified that he filed the lien to recover money owed to him for his own labor and for work performed on the project by the plumbing contractor.

6

by failing to furnish a written contract, which was prima facie evidence of a UTPA violation.

[¶12] The Breivogels filed a motion for amended and additional findings of fact and conclusions of law. The court declined to amend the factual findings, but awarded the Breivogels $3,832.43 in costs and $30,000 in attorney fees as permitted by the UTPA. The Breivogels timely appealed. M.R. App. P. 2A(a), 2B(c).

## II. DISCUSSION

[¶13] The Breivogels contend that the Superior Court erred in (1) determining that they did not meet their burden of proof as to their counterclaims for fraud, negligent misrepresentation, and breach of contract; (2) calculating the damages recoverable under the UTPA stemming from Sweet's violation of the HCCA; and (3) awarding an insufficient amount of attorney fees. We disagree and affirm the trial court's judgment in full.

A.    The Breivogels' Counterclaims

[¶14] Because, at trial, the Breivogels had the burden of proof on each of their counterclaims and the Superior Court concluded that they failed to meet their burden, we must determine whether, on appeal, they have demonstrated that "a contrary finding is compelled by the evidence." *Gravison,* 2016 ME 35,

¶ 31, 134 A.3d 857 (quotation marks omitted); *see also Young v. Lagasse*, 2016 ME 96, ¶ 8, 143 A.3d 131; *Rice v. Cook*, 2015 ME 49, ¶ 11, 115 A.3d 86; *St. Louis v. Wilkinson Law Offices, P.C.,* 2012 ME 116, ¶¶ 16, 19, 55 A.3d 443. Because the Breivogels moved for amended and additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52, we "review the original findings and any additional findings made in response to the motion for findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record." *Bayberry Cove Childrens' Land Tr. v. Town of Steuben,* 2013 ME 35, ¶ 5, 65 A.3d 1188 (quotation marks omitted).

[¶15] The evidence did not compel the court to issue findings necessary for the Breivogels to prevail on their counterclaims. *See Gravison,* 2016 ME 35, ¶ 31, 134 A.3d 857. The court was entitled to find, as it did, that throughout the construction process, the parties held different understandings of the work to be performed and the total cost of the project. The court was also entitled to find that, because of this difference in understanding, the parties did not form an express contract. Therefore, the court did not err in concluding that the Breivogels failed to prove that Sweet committed fraud, negligent misrepresentation, or breach of contract. *See Young,* 2016 ME 96, ¶ 8,

143 A.3d 131; *Rice*, 2015 ME 49, ¶ 11, 115 A.3d 86; *St. Louis*, 2012 ME 116, ¶ 16, 55 A.3d 443; *see also Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221 ("Factual findings should not be overturned in an appellate proceeding simply because an alternative finding also finds support in the evidence.") (quotation marks omitted).

B.      Damages

[¶16]  The Breivogels also contend that the court abused its discretion in its award of damages in this case.  Because the court found that there was no contract between the parties, it applied the principles of quantum meruit and concluded that the Breivogels had suffered a "relatively slight loss of money in the amount of $640.77" under the UTPA.  The Breivogels argue that the court's application of this legal principle was misplaced because the parties never reached a common understanding of the material terms of the project and because Sweet's violations of the HCCA and UTPA warranted a larger award of damages.  We will vacate an award of damages only when there is no competent evidence in the record to support it.  *Woodworth v. Gaddis*, 2012 ME 138, ¶ 9, 58 A.3d 1109.

1.     Quantum Meruit

[¶17]  Quantum meruit is appropriate where there is no formal written contract but a contract implied in fact can be inferred from the parties' conduct. *See Paffhausen v. Balano*, 1998 ME 47, ¶ 9, 708 A.2d 269.  In these circumstances, quantum meruit requires that "(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Id*. ¶ 8 (citations and quotation marks omitted).  Although contract formalities do not exist with respect to an implied contract, there must be a reasonable expectation of compensation for goods or services rendered. *See id*. ¶ 9.  A party may recover under quantum meruit even where "there was not a clear accession on both sides to one and the same terms" if it is clear from the circumstances that the services were not intended to be gratuitous. *Id*. (quotation marks omitted).

[¶18]  In this case, while it is clear that the parties did not sign a contract or share an exact understanding of the scope and terms of construction, the court's application of quantum meruit was appropriate.  The parties engaged in months of discussions and planning before the project began and remained in fairly constant communication throughout every phase of construction.  In

particular, the binders of emails and hundreds of photographs admitted in this case, combined with evidence of the Breivogels' numerous site visits, support the court's conclusion that the Breivogels were aware of and assented to Sweet's performance of the work on their property. The Breivogels could have terminated the project at any time, but instead continued working with Sweet, despite admitted misgivings, and accepted the full benefit of Sweet's services in the form of a completed timber frame home ready for occupancy. Given the court's findings, to allow the Breivogels to accept the benefit of Sweet's work without paying the value of materials and services undercuts the purpose of quantum meruit: to allow recovery for services rendered when the words or conduct of the recipient created an expectation of compensation. *See id.* The Breivogels permitted Sweet to continue the project beyond the dried shell phase—the point at which the Breivogels realized that Sweet had a different understanding of the scope and cost of construction—and allowed him to continue working until their home was fit for occupancy.

[¶19] Moreover, contrary to the Breivogels' arguments challenging the court's assessment of the reasonable value of the work Sweet completed, the court did not err in its determination of damages. Based on the testimony of the parties and Sweet's expert witness, the evidence of multiple requested

upgrades and demands for luxury-quality materials, and the biweekly invoices in evidence, the court did not abuse its discretion in determining that Sweet was entitled to $600,554.98, which had already been paid by the Breivogels, nor in concluding that the Breivogels overpaid by $640.77 for the tiler's work.

2.      Recovery Under the UTPA

[¶20]   The Breivogels further argue that they are entitled to greater recovery under the UTPA.  *See* 10 M.R.S. § 1490; *see also* 5 M.R.S. § 213(1), (2).  Contrary to their arguments, the court understood correctly the interplay between the HCCA and UTPA and properly applied the law in this case.

[¶21]  The court found, and neither party disputes, that the agreement to build the Breivogels' home falls within the ambit of the HCCA.  10 M.R.S. § 1487.  The HCCA is intended to combat the problems of "faulty home construction," *see* L.D. 1044 (113th Legis. 1987), and requires that "[a]ny home construction contract for more than $3,000 in materials or labor must be in writing."  10 M.R.S. § 1487.  While there is no remedy specified under the HCCA, a violation of the HCCA is considered prima facie evidence of a violation of the UTPA, which does provide for specific remedies, including restitution and attorney fees.  *See* 10 M.R.S. § 1490(1); *see also* 5 M.R.S. § 213(1), (2); *VanVoorhees v. Dodge*, 679 A.2d 1077, 1082 (Me. 1996); *Parker v. Ayre*,

612 A.2d 1283, 1284-85 (Me. 1992).  To recover under the UTPA, a party must demonstrate "a loss of money or property as a result of a [UTPA] violation." *Parker*, 612 A.2d at 1285 (quotation marks omitted).  Key inquiries into whether the homeowners have suffered a financial or tangible loss are whether the materials claimed to be furnished by the plaintiff were in fact furnished and whether the prices were fair and reasonable.  *See id.*  In other words, in order to recover under the UTPA, the homeowners must demonstrate that they did not receive the value that should have been conferred.  *See id.*

[¶22]  The Breivogels are not entitled to additional recovery under the UTPA because they failed to demonstrate that they did not receive value for their payments for Sweet's services.  The court properly relied on *Parker*, a case that, as the court noted, mirrors the facts and legal analysis applicable in the Breivogels' case.  Like the homeowner in *Parker*, the Breivogels (1) proved violations of the HCCA and UTPA, but failed to identify any injury or demonstrate a substantial loss of money or property resulting from the violations—i.e. a loss stemming specifically from Sweet's failure to memorialize the parties' agreement in writing—and (2) received the benefit of the materials and services provided by Sweet.  *Id.* at 1284-85; *see also Tungate v.*

*MacLean-Stevens Studios, Inc.*, 1998 ME 162, ¶¶ 9-11, 714 A.2d 792. Therefore, they are not entitled to additional damages under the UTPA.

C.    Attorney Fees

[¶23]    Finally, the Breivogels argue that the Superior Court abused its discretion in awarding them only $30,000 in attorney fees when they requested over three times that amount. Because the trial court is in the best position to observe the unique nature and tenor of the litigation as it relates to a request for attorney fees, we review the grant of fees for abuse of discretion and any underlying factual findings for clear error. *See Roussel v. Ashby*, 2015 ME 43, ¶ 10, 114 A.3d 670.

[¶24]    "[A]n award of attorney fees pursuant to the UTPA is recoverable only to the extent that it is earned pursuing a UTPA claim." *William Mushero, Inc. v. Hull*, 667 A.2d 853, 855 (Me. 1995). Because "courts have no authority to award attorney's fees to a litigant in the absence of statutory authorization or agreement by the parties," *Poussard v. Commercial Credit Plan, Inc.*, 479 A.2d 881, 883 (Me. 1984), to recover fees, claimants must "apportion their attorney fees between the claims for which fees may be awarded and the claims for which there is no [statutory] entitlement to fees," *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 30, 901 A.2d 189. Many claimants do this by submitting

14

affidavits and billing records tailored to show the court the connection between the fees requested and the UTPA claim; however, there are cases in which the fee and non-fee claims arise from common facts and are so deeply entwined that separation is impossible. *See id*. ¶ 32.

[¶25] Here, the Breivogels did not distinguish between their fee and non-fee claims. Instead, they asserted that they were entitled to recover the full amount of their attorney fees because all of the claims and counterclaims in the case were inextricably entwined with, and stemmed from, the UTPA violations. Contrary to this argument, the court properly exercised its discretion in determining a reasonable award of attorney fees based on its reasoned application of the factors enumerated in *Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 15, 165 A.3d 357, particularly the Breivogels' limited degree of success.[4] The court did not err in awarding to the Breivogels fees for Sweet's

---

[4]   When determining what constitutes reasonable attorney fees, the trial court considers the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the degree of success; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 15, 165 A.3d 357 (quotation marks omitted).

UTPA violation and for the Breivogels' successful defense of Sweet's claim for additional payments, or in declining to award them fees for the counterclaims on which Sweet prevailed and for which attorney fees are not recoverable. *See Roussel*, 2015 ME 43, ¶ 10, 114 A.3d 670. We are not persuaded by the Breivogels' bare assertions that all of the claims and counterclaims in this case are inextricably linked, and we affirm the Superior Court's award of fees.

[¶26] In counterpoint to the Breivogels' challenge to the sufficiency of the attorney fees award in this case, the court's judgment underscores the importance of the statutory requirement of having written contracts in home construction projects subject to the HCCA. 10 M.R.S. § 1487. In projects of this magnitude, especially in an industry as specialized as the construction of traditional timber frame homes, the absence of a written contract can lead to unfulfilled expectations, immense confusion between homeowners and contractors, and costly litigation. It is clear from the record that Sweet and the Breivogels did not share the same understanding of the scope and cost of this project, a failing that could have been clarified by a written agreement. However, Sweet's violations of the HCCA and UTPA were properly remedied by the court. Not only must Sweet pay his own attorney fees, he must also pay $30,000 of the Breivogels' fees, a substantial penalty for his serious violations,

and, in addition, he has lost his lien claim of $52,478.35 for allegedly uncompensated work.

The entry is:

Judgment affirmed.

---

Christopher E. Pazar, Esq. (orally), and William J. Kennedy, Esq., Drummond & Drummond, LLP, Portland, for appellants Carl E. and Elizabeth A. Breivogel

Daniel A. Pileggi, Esq. (orally), Acadia Law Group LLC, Ellsworth, for appellee John Sweet II

Hancock County Superior Court docket number CV-2014-52
FOR CLERK REFERENCE ONLY