MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:    2019 ME 135
Docket:      Kno-18-340
Argued:      June 26, 2019
Decided:     August 15, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Dissent:     ALEXANDER, J.

RICHARD TRANFIELD et al.

v.

PATRICIA ARCUNI-ENGLISH

MEAD, J.

[¶1]  Patricia Arcuni-English appeals from a judgment of the Superior Court (Knox County, *Wheeler, J.*) in favor of Richard Tranfield and Karla Doremus-Tranfield (the Tranfields) on their complaint alleging that Arcuni-English's installation of trees on the parties' boundary line constituted a nuisance pursuant to both Maine's spite fence statute, 17 M.R.S. § 2801 (2018), and common law.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The court found the following facts, which are supported by competent record evidence.  *See Rice v. Cook*, 2015 ME 49, ¶ 3, 115 A.3d 86.  In January 2016, the Tranfields purchased a parcel of land that abuts and is uphill

2

from Arcuni-English's property. At that time, the Tranfield property had a slot view of the ocean out across Arcuni-English's property, but Arcuni-English was still afforded privacy by trees and overgrown shrubbery at lower levels on the parties' boundary line.

[¶3] On the day the Tranfields moved in, Mr. Tranfield went onto Arcuni-English's property to ask if he could use some of her firewood. She was not home, and he took some wood. Arcuni-English saw him in her driveway, did not recognize him, and thought that he was stealing her firewood. Later, Mr. Tranfield was removing a tree near a shed on his property and limbing dead branches on his property along the parties' boundary line. Arcuni-English approached him, expressing anger that he was cutting trees without discussing it with his neighbors beforehand. Arcuni-English then told Mr. Tranfield that she would put up a ten-foot fence to block the Tranfields' view. Additionally, Arcuni-English expressed displeasure with the Tranfields removing a koi pond on their property and with the fact that their dogs had urinated and defecated on her property.

[¶4] Later, while Arcuni-English was traveling, a local landscaper who works for both parties sent Arcuni-English a photograph of the parties' boundary line. The Tranfields had cleared much of the deadwood and debris

on their property, thereby opening up a view of their house to Arcuni-English's property. Arcuni-English was devastated by the Tranfields' action on their property. She called the landscaper and told him that she needed trees and privacy, and they discussed how to do it.

[¶5] In April 2016, the landscaper planted approximately twenty-four arborvitaes along the boundary line. These trees were ten to twelve feet in height; some shorter trees were also installed to create an additional row to fill in any gaps. The landscaper installed seven four-to-six-foot pine trees near a structure on Arcuni-English's property.

[¶6] The Tranfields filed a complaint against Arcuni-English[1] in the Superior Court alleging that the plantings constituted a nuisance and seeking damages and injunctive relief.[2] A bench trial was held on September 29, 2017, and on February 9, 2018, the court entered a judgment in favor of the Tranfields. In determining that Arcuni-English had installed a spite fence, the court relied on the following facts, all of which are supported by competent evidence in the record:

---

[1] Arcuni-English is a party to this litigation individually and as the trustee of two trusts that have ownership interests in her property.

[2] Pursuant to 17 M.R.S. § 2701 (2018), "Any person injured in his comfort, property or the enjoyment of his estate by a common and public or a private nuisance may maintain against the offender a civil action for his damages, unless otherwise specially provided."

[T]he relationship between the Tranfields and Arcuni[-]English was poor from the first day the Tranfields moved to the neighborhood and tried to borrow firewood. The relationship became increasingly contentious . . . [and b]y the time[] Mr. Tranfield limbed the dead branches from the trees on his side of the property line opening up his property to . . . Arcuni[-]English's property, . . . Arcuni[-]English decided to take action . . . and she instructed [the landscaper] to put up trees and to bring back her privacy.

Given an excuse, . . . Arcuni[-]English finally made good her threat to put up a fence to block the Tranfields' view, made when the Tranfields first moved into the neighborhood. Her dominant motive was to install a continuous green barrier between the two properties along the boundary line. The trees were installed without any advance notice to the Tranfields, along the portion of the boundary that would block their view and without considering other types of vegetation that could provide her privacy without blocking entirely the slot view that the Tranfields had or without totally closing in their back yard. The trees that were installed were 8 to 12 feet tall and will top out at 20 feet. They are 4 to 6 feet wide already creating a continuous wall of green. [Arcuni-English]'s motive was malicious and without that motive, she would not have installed the trees as she did, even to vindicate her privacy interest, which could have been satisfied with a use of fewer and more contained trees and bushes. Arcuni[-]English, with a dominant malicious motive, installed a continuous green wall that was both dense and unnecessary to restore her privacy. Having considered the intense animosity that Arcuni[-]English held towards the Tranfields, the court determines that she installed a spite fence . . . .

[¶7] The court ordered Arcuni-English to remove every other pine tree along the boundary line, remove the trees that were planted as an additional row to fill in gaps, and trim all of the arborvitae to a height no greater than ten

feet. Additionally, the court prohibited Arcuni-English from replacing any arborvitae that die off.[3] Following the issuance of the judgment, Arcuni-English timely appealed. *See* M.R. App. P. 2B(c)(2).

## II. DISCUSSION

[¶8] "We review a trial court's factual findings for clear error and its application of the law to those facts de novo. The findings will be upheld if they are supported by competent evidence in the record, even if the evidence might support alternative findings of fact." *Peters v. O'Leary*, 2011 ME 106, ¶ 15, 30 A.3d 825 (citation and quotation marks omitted).

[¶9] Pursuant to 17 M.R.S. § 2801, "Any fence or other structure in the nature of a fence, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance." The Tranfields, as the plaintiffs, bore the burden of demonstrating each of these elements by a preponderance of the evidence.[4] *See Ma v. Bryan*, 2010 ME 55, ¶ 6, 997 A.2d 755 (stating that

---

[3] Arcuni-English filed a motion for findings of fact and conclusions of law that the court denied, stating that it had found all of the facts necessary to its decision.

[4] Although the Tranfields assert in their brief that a defendant has the burden to prove the absence of a malicious purpose, at oral argument they abandoned that view and acknowledged that it was their burden to prove all statutory elements of a spite fence claim, including the existence of malice as a dominant factor in the erection of the fence.

6

it is the plaintiff's burden of proof to establish the elements of a cause of action); *see also State v. Gagne*, 2019 ME 7, ¶ 30, 199 A.3d 1179. "For purposes of the [spite fence] statute, a plaintiff need not prove that malice, the purpose to annoy, was the sole motive for building the fence. The plaintiff need only prove that such was the dominant motive, meaning that without that malicious motive, the fence would not have been erected or maintained."[5] *Peters*, 2011 ME 106, ¶ 16, 30 A.3d 825 (citation, quotation marks, and emphasis omitted); *see also Healey v. Spaulding*, 104 Me. 122, 125, 71 A. 472, 473 (1908); *Lord v. Langdon*, 91 Me. 221, 222, 39 A. 552, 552 (1898).

[¶10] Arcuni-English argues that the court erred in determining that the Tranfields demonstrated that she had a dominantly malicious motive. We disagree. The court's finding of malice is supported by the history of animosity between the parties; the court's determination that Arcuni-English's claimed reason for building a fence was not credible; Arcuni-English's installation of the fence without advance notice to the Tranfields; and the size, extent, and anticipated growth of the trees. *See Peters*, 2011 ME 106, ¶ 17, 30 A.3d 825

---

[5] The dissent introduces the novel notion that provocation constitutes some manner of affirmative defense to the malicious construction of a spite fence. Dissenting Opinion ¶¶ 20, 22. No authority is cited for this proposition because none exists. The spite fence statute is a creation of the Legislature, and the Legislature deemed fit to make the dominant motive of malice the singular "mens rea" element of the cause of action. No justifications or mitigating factors were included in the statute. The dissent's faulting of the trial court for not considering whether Arcuni-English was provoked is therefore misplaced.

(concluding that "[t]he court's finding of malice [was] supported by evidence of the number of trees planted; the size, extent, and anticipated rapid growth of the trees; . . . [the fence-builder]'s secrecy in making arrangements for the plantings; [and the fence-builder]'s own testimony regarding" interactions between the parties); *Rice*, 2015 ME 49, ¶ 16, 115 A.3d 86 (stating that the trial court is in the best position to determine the credibility of the testimony and is not required to believe any particular witness); *see also Obelensky v. Trombley*, 2015 VT 34, ¶ 30, 115 A.3d 1016 (reasoning that the trial court properly considered the history of intense animosity and conflict between the parties and the credibility of the fence-builder's claimed reasons for building the fence). Although the court stated that it did "not doubt that her privacy was part of her concern," it determined that Arcuni-English's "motive was malicious and without that motive, she would not have installed the trees as she did, even to vindicate her privacy interest."

[¶11] Arcuni-English further argues that it was erroneous to assign a malicious motive to her because she deferred to the landscaper on decisions about what to plant and where. The court stated, however, that its analysis of whether this was a spite fence was informed by the acrimonious encounters between the parties that had occurred before any decisions concerning what to

8

plant were made. The court specifically found that, after Arcuni-English had warned the Tranfields that she would put up a fence to obstruct their view, she "decided to take action" by "instructing [the landscaper] to put up trees." Arcuni-English and the landscaper then "discussed how to do it." These findings, based in the record, support the court's determination of a dominantly malicious motive.

[¶12] Finally, Arcuni-English argues that the court erred by finding that the height of the trees unnecessarily exceeded six feet because she presented the landscaper's uncontradicted testimony that trees of this height were necessary to protect her privacy. Contrary to Arcuni-English's assertion, the court was not required to believe the testimony of any particular witness, even if that testimony was uncontradicted. *See Rice*, 2015 ME 49, ¶ 16, 115 A.3d 86; *see also Handrahan v. Malenko*, 2011 ME 15, ¶ 14, 12 A.3d 79. Because this trial began with a "view" of the property, the court was able to weigh the testimony it heard during the trial in light of the information it acquired during that view. As its judgment indicates, the court specifically considered the number and size of the plantings, as well as Arcuni-English's malicious motive, in finding that the trees were "unnecessarily" taller than six feet. *See Rice*, 2015 ME 49, ¶ 15, 115 A.3d 86.

[¶13] In summary, the court did not err by determining that Arcuni-English's installation of trees on the parties' boundary line constituted a spite fence pursuant to section 2801 because her installation of more than thirty trees, which created a dense and continuous wall, was done with malice.[6] Furthermore, the court crafted a fair and limited remedy based on its findings; the plantings that constituted a legitimate privacy barrier between the properties were allowed to remain.[7] Arcuni-English's plantings will continue to provide the privacy that she previously enjoyed and, at the same time, the slotted view of the water from the Tranfields' property will be protected.

---

[6] Because the court did not err by determining that Arcuni-English's installation of trees constituted a spite fence, we need not reach the issue of whether the fence constituted a common law nuisance. *Rice v. Cook*, 2015 ME 49, ¶ 16 n.2, 115 A.3d 86; *see also Peters v. O'Leary*, 2011 ME 106, ¶ 18, 30 A.3d 825.

[7] The dissent states that the court's mandate to eliminate every other pine tree that had been planted far exceeded what was needed to return the parties to the status quo. Dissenting Opinion ¶¶ 24, 25. However, this remedy was fashioned, as the court stated in its judgment, to reduce the stress on the trees and to more closely approximate preexisting conditions. Indeed, by the time of trial, the court—which had the benefit of seeing the properties, including the plantings, first-hand during the view—observed that some of the trees had died because they had been planted too close together. In addition, the court found that the Tranfields had not removed any trees on the parties' boundary line to begin with but had merely removed overgrown shrubbery, deadwood, and debris. Thus, this relief, which allows a significant number of trees to remain along the boundary line, was appropriate and necessary.

The entry is:

Judgment affirmed.

_____

ALEXANDER, J., dissenting.

[¶14]   The evidence in this case, as outlined in the Court's opinion, demonstrates that from the time they moved onto their property, Richard Tranfield and Karla Doremus-Tranfield provoked, promoted, and continued an adverse relationship with their elderly neighbor, Patricia Arcuni-English.   I respectfully dissent, because (1) the trial court failed to sufficiently consider the role the Tranfields' provocations played in Ms. Arcuni-English's efforts to restore her privacy after the Tranfields had eliminated the privacy barrier between the two properties, and (2) the trial court's finding that Ms. Arcuni-English requested her landscaper to plant trees "to ensure her privacy" and did not tell him "to block their view," is inconsistent with its finding that malice—a purpose to annoy—was the dominant motive in planting the trees at issue.

[¶15]   The record establishes, without significant dispute, that Patricia Arcuni-English, a woman in her eighties, lives alone in the Camden residence she has occupied for more than forty years.  The date the Tranfields moved in,

a cold January day in 2016, Ms. Arcuni-English arrived home to find Mr. Tranfield apparently stealing firewood from her home. The trial court found that the Tranfields "left a note on her door" indicating that they had taken the firewood. That finding has no support in the record evidence.[8] In any event, a note, if there ever was one, would have done little to ameliorate the bad first impression already created. The Tranfields followed up the negative start to the neighborly relationship by releasing their dogs to urinate and defecate on Ms. Arcuni-English's property. Then, without notifying Ms. Arcuni-English, they cut a couple of trees near her property.

[¶16]  After these events, and understandably provoked and angry, Ms. Arcuni-English made the threat to erect a fence to block the Tranfields' view of the ocean. Sometime later, without notice to Ms. Arcuni-English and while she was away from her residence, the Tranfields chopped down the barrier of greenery on the Tranfields' property that had provided privacy to Ms. Arcuni-English's home for several decades.

[¶17]  When informed of the removal of the privacy barrier by a local landscaper, the court found that Ms. Arcuni-English "was devastated," and that she called the landscaper and said, "I need trees." The court further found that

---

[8]  Some reference is made to this note in the Tranfields' attorney's opening statement, but no testimony or exhibit offering related to this note appears in the transcript.

"*She never told [the landscaper] to block their view*, however[,] he was her agent when he sent the photo to her of the trees cut down. *She only said she needed trees and privacy* and directed [the landscaper] to install trees *but left to him decisions concerning what trees and where to place them to ensure her privacy*." (Emphasis added.) Later, the court found that it "does not doubt that her privacy was part of her concern."

[¶18] These findings—the only findings regarding Ms. Arcuni-English's motive in requesting the planting of trees—are contrary to the court's conclusion that malice was Ms. Arcuni-English's dominant motive in having trees planted on her side of the boundary. The fact that the landscaper may have been Ms. Arcuni-English's agent in planting the trees, and may have over-planted the trees necessary to restore her privacy, does not support the finding that Ms. Arcuni-English's dominant motive was malice. Notably, the court did not find that the landscaper, acting on Ms. Arcuni-English's behalf, acted maliciously or with malice.

[¶19] The spite fence statute specifies that "[a]ny fence or other structure in the nature of a fence, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance." 17 M.R.S.

§ 2801 (2018). The statute does not define "malice." In other contexts, we have defined "malice" or "malicious" conduct as "conduct . . . motivated by ill will toward the plaintiff." *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985) (addressing malice related to award of punitive damages).

[¶20] The spite fence statute does not appear to contemplate the situation, as occurred in this case, where the adversity in the relationship that the court found led to the planting of the trees was provoked, at least in part, by the hostile actions of the plaintiffs, and where the "fence or other structure" only replaced a barrier that previously existed.

[¶21] Interpreting the spite fence statute, we have said that for the purposes of that statute, "a plaintiff need not prove that malice, the purpose to annoy, was the sole motive for building the fence. The plaintiff need only prove that such was the dominant motive, meaning that without that malicious motive, the fence would not have been erected or maintained." *Peters v. O'Leary*, 2011 ME 106, ¶ 16, 30 A.3d 825 (emphasis omitted) (citations omitted).

[¶22] In applying the standards set by statute and our precedent, the trial court failed to adequately consider (1) whether the malice that it found was provoked or caused by the Tranfields' own actions in creating the adverse

relationship with their neighbor, and (2) how it could find malice the "dominant motive" in planting the trees when it also found that "she never told [the landscaper] to block their view" and "left to him decisions concerning what trees and where to plant them to ensure her privacy."

[¶23] Before the trial court and before us, Ms. Arcuni-English argues that the Tranfields' provocations and elimination of her privacy were the cause of her actions about which the Tranfields complain. Certainly, in the trial, the court was faced with conflicting evidence. We have said that the existence of contrary evidence that would support a different result, without more, will not justify vacating the trial court's fact-findings. *See Preston v. Tracy,* 2008 ME 34, ¶ 10, 942 A.2d 718; *see also State v. Jeskey*, 2016 ME 134, ¶ 32, 146 A.3d 127. The problem here, though, is not conflicting evidence, but conflicting, inconsistent trial court findings: finding that malice was Ms. Arcuni-English's dominant motive in requesting that the landscaper plant the trees, while also finding that "she never told [the landscaper] to block [the Tranfields'] view," leaving to the landscaper "decisions concerning what trees and where to plant them to ensure her privacy." The directly inconsistent findings regarding Ms. Arcuni-English's motive for requesting the planting of the trees cannot

support the judgment reliant on a finding of a dominant motive of malice. *See Peters*, 2011 ME 106, ¶ 16, 30 A.3d 825.

[¶24]  Further, in finding a "dominant motive" of malice in the replacement of the privacy barrier, the remedy the trial court awarded, eliminating every other pine tree that had been planted, far exceeded what was needed to return the parties to the status quo and allow Ms. Arcuni-English to regain the privacy she had enjoyed for several decades.

[¶25]  While there is evidence that the planting of the trees slightly limited the Tranfields' "slot view" of the ocean across Ms. Arcuni-English's property, the pictures in evidence of the slot view before and after the planting of the trees indicate that cutting the height of three of the newly planted trees would restore the view to the extent that it had existed before the Tranfields purchased the property.  Except for these few trees, there is no evidence that the Tranfields' view has been altered in any way from what existed when they purchased the property.  Thus, beyond inconsistent findings and failing to consider the effect of the Tranfields' provocations on their capacity to maintain the action and receive a finding of malice, the remedy ordered by the court—removing every other pine tree along the privacy barrier—far exceeded the extent of relief necessary or appropriate to be awarded in this case.

[¶26] For these reasons, the judgment of the Superior Court should be vacated and the matter remanded for the Superior Court to consider, in both its findings and any relief it elects to award, (1) the extent to which the Tranfields' provocations caused the response by Ms. Arcuni-English, (2) whether the dominant motive in Ms. Arcuni-English's actions was malice or restoration of her privacy, and (3) whether, if the finding of a dominant motive of malice is maintained, any relief should be awarded beyond the lowering of the height of the three trees that appear to obstruct the slot view of the ocean to a greater extent than the view was already limited by other growth indicated in the picture taken before the Tranfields purchased their home.

---

Joseph W. Baiungo, Esq. (orally), Belfast, for appellant Patricia Arcuni-English

Dana F. Strout, Esq. (orally), Rockport, for appellees Richard Tranfield and Karla Doremus-Transfield

Knox County Superior Court docket number CV-2016-33
FOR CLERK REFERENCE ONLY