STATE OF MAINE                          BUSINESS AND CONSUMER COURT
Cumberland, ss.                         LOCATION: Portland
                                        DOCKET NO: BCD-CIV-2021-00048


AMANDA LOWE,                      )
                 Plaintiff,      )
                                 )
   v.                            )   JUDGMENT IN FAVOR OF
                                 )   DEFENDANTS FOLLOWING BENCH
SRT CUSTOM BUILDING, INC.,       )   TRIAL
JASON M. THERIAULT, and          )
SHAWN R. THERIAULT,              )
                 Defendants.     )


This case is about a dispute between a homeowner and the construction company hired to complete a large home renovation.  Because the homeowner requested numerous change orders the project ran out of funds, the homeowner refused to continue paying the builders, and the builders stopped work on the project. The issues of liability and damages were bifurcated, and the liability case was tried to the Bench on June 22, 2022. Plaintiff Amanda Lowe ("Lowe") and Defendant Shawn R. Theriault ("Theriault") testified.

At the close of Lowe's case, Defendants orally moved for a directed verdict. On the record, the Court granted the motion in part[1] but denied it in part in respect to two counts: breach of contract (Count I), and violation of Maine's Unfair Trade Practices Act (Count VIII). As explained on the record, the Court also declined to allow Lowe to pierce the corporate veil. For the reasons

_____

[1] The court granted Defendants' motion for a directed verdict on the following counts: Breach of Expressed Warranties (Count II), Breach of Implied Warranties (Count III), Violations of the Home Constructions Contracts Act (Count IV); Constructions Contract (V), Conversion (VI), and Uniform Deceptive Trade Practices Act (VII).

1

discussed below, the Court determines Plaintiff has not satisfied her burden as to liability and the Court grants judgment to Defendants on Counts I and VIII.

## I.    Findings of Facts

Based on the evidence adduced at trial, and drawing all reasonable inferences therefrom, the Court makes the following findings of fact.

On June 16, 2020, Lowe entered into a written construction contract with Defendant SRT Custom Building, Inc. ("SRT") to complete a two-story addition off the back of her home in Yarmouth, Maine. Paragraph nine (9) of the contract, Resolution of Disputes, was initialed, but the parties failed to select whether disputes would be resolved by binding arbitration or by mediation. SRT sent Lowe the contract expecting her to select an option, but she returned it without doing so. The parties agreed to a contract price of $169,435.00 subject to any additional change orders. Three written change orders were executed in writing, but as will be discussed below, Lowe made many change orders not memorialized in writings.

Lowe's home was originally a two-story Cape style home measuring about 900 square feet total. After the two-story home addition, the home is closer to 2,000 square feet. The original contract covered a master bedroom, a bathroom, a laundry room, a deck, a small room between the deck and the main house, a crawl space, and one bedroom upstairs. The original contract did not include any work on the interior or exterior work of the existing structure other than what was required to complete the addition.

The scope of the project grew significantly beyond the initial contract due to Lowe making numerous changes. Only three change orders, all of them modest, were memorialized in writing by SRT. The unwritten, oral changes made by Lowe included tiling; new kitchen cabinets and countertops; basement storage under the addition that required excavation of the basement storage

2

area, a concrete slab, and seven-foot foundation wall; plan modifications to account for an increase in elevation of the addition caused by the basement storage area; and an increase in HVAC throughout the home. Lowe also requested SRT change thirteen (13) white windows in the original structure to match the black windows she selected for the addition. Changing the windows entailed removing and reinstalling the external siding, removing the old windows, installing the new windows, interior sheet rock, and adding the trim. While SRT had the siding off, SRT also needed to address rot issues around the windows. The windows, old siding, and debris from replacing the windows in the existing structure also increased the cost of the dumpster; the cost increase was not considered in the original dumpster quote.

The kitchen Lowe added to the project went significantly overbudget due to Lowe's decisions and requests. When Lowe requested kitchen cabinets be installed, SRT quoted her and made an allowance for one wall of seven prefabricated cabinets with formica-type countertops. SRT sent Lowe to Hammond Lumber to purchase the cabinets with a blank check[2]; however, Lowe overspent on the cabinets by purchasing custom cabinets with an island. The costs of countertops increased as well due to Lowe also selecting a higher quality counter and an increase for square footage due to the addition of the island; she spent nearly double the allowed amount. Lowe stated the overages were due to SRT not providing guidance on what she should buy; however, she was aware of the allowance amounts.

Lowe and her husband demoed a brick chimney themselves; but in doing so, they tore down a closet to gain access to it.[3] This resulted in SRT having to repair the corner of the house

---

[2] SRT provided Lowe with a blank check to purchase cabinets and another for counters due to the project not being far enough along for the bank to release money for those purchases but the orders needing to be submitted due to supply chain delays of 6-8 weeks between ordering and receiving the items. Lowe never refunded the amounts used to purchase the counters and cabinets, which amounted to about $5,000, despite the bank later releasing the funds.
[3] Lowe and her husband also did the insulation work in the home.

effected by the chimney demo despite the work not being included in the original contract. The additional cost of disposing of the brick in the dumpster was also not considered in the original contract.

The project was further complicated due to a momentous change in Lowe's living plans. Originally, Lowe was going to be living with her mother during the construction. Lowe's mother's home suffered a fire, so Lowe ended up living in the home during the construction. Lowe's living in the home changed the cost and timeline of the project due to SRT needing to keep the house habitable every day. For the house to be habitable, SRT had to ensure the house was warm, had a functional bathroom, and running utilities. To accommodate this, the bathroom on the remodel had to be built first before demoing anything else in the home. Further Lowe's occupancy of the home also made demoing and building more difficult and costly. For example, SRT had to build a temporary insulated back wall every night that had to be removed the next morning before resuming work. SRT also had to install the kitchen cabinets three times. The first time was to allow some plumbing work to be completed. The second installation was quickly done to allow Lowe to host Christmas at the home. And the final time was to allow SRT to install the cabinets properly after the quick holiday installation to ensure they were installed properly.

Tiling was also not included in the original contract but was added to the scope of the work at Lowe's request so there was no allowance for tiling in the contract. SRT originally expected to prepare the floor by installing cerement boards and stiffening up the floor with structural supports. When Lowe requested SRT perform the tiling, it was agreed that the work would be done for $10 per square foot, amounting to an additional $6,500 cost of the project.

Under the original contract, SRT was supposed to subcontract the plumbing and electrical work, but Lowe was the party that contracted and paid for both. Lowe knew the plumber,

contracted with him directly, chose her own fixtures and finishes, and paid him directly. SRT was not involved in the choices associated with the plumbing, nor did it have an influence on what Lowe spent. SRT knew the electrician and had worked with him in the past so he was able to offer a deal for Lowe whereby if she paid him in cash, the electrician would give her ten percent (10%) off. Lowe agreed to those terms, entered into the contract with the electrician, and paid the electrician.

SRT did not reduce any of Lowe's verbal change orders to writing. However, SRT updated its build cost spreadsheet regularly to track costs, and kept Lowe informed of all costs and progress on the project. Lowe was aware of all the increased costs. All the costs were fair and reasonable. Although Lowe relieved SRT of its obligation to subcontract with or pay the electrician and plumber, Lowe's other changes, as described above, added substantially to the net cost of the remodel. Lowes verbal change orders resulted in costs exceeding the original contract price by at least $40,000, plus SRT gave Lowe $15,000 to $20,000 for the counters and cabinets due to the blank checks she never paid back. The court notes that Lowe does not deny requesting any of the changes that increased the cost of the work, nor does she allege that SRT solicited or coerced her into making any of those requests or misled her on expected costs of the additions. She also had no complaints about the quality of SRT's work, which was performed in a workmanlike manner.

The parties had a friendly working relationship throughout the project until the reality of the financial impact of Lowe's changes caused Lowe to panic and the relationship to sour. On March 2, 2021, Theriault, as a representative of SRT, Lowe; and Lowe's husband, Ryan, met to discuss how to finish the project due to the funds in escrow being depleted. Lowe told Theriault that the funds from the bank loan had been depleted, and she expected SRT to finish the project without any further payments. Later that day, Lowe emailed Theriault. The email read:

Hey Shawn,
First, thank you for meeting with us today. We appreciate your time and the shared discomfort of the conversation.

When you're at the house tomorrow, we hope that we're at a place to come to a resolution regarding the remainder of the project. *We're asking that you commit to finishing the project with funds that we've already given you, which total the estimate and the change order we have, and a solid date of when it will be completed by.*

Thanks,
Amanda and Ryan

(Def.'s Ex. 7)(emphasis added). On March 13, 2021, SRT received notice from Lowe's attorney that failure to comply with Lowe's demand that SRT complete the project without any further payments would result in legal action. SRT discontinued work on the project in early April of 2021 because of Lowe's refusal to continue paying SRT for its work.

## II.    Analysis

Lowe argues that SRT breached the contract by failing to complete the project as contracted. She contends that because SRT did not reflect her many, frequent, and substantial change orders in writing, she was not required to pay for them—even though the work was of good quality and fair and reasonably priced. Lowe asserts that SRT was obligated to complete the project for the original contract price (including the three modest written change orders)—without regard for all the verbal change orders she made. Lowe also maintains that SRT's lack of written change orders constitutes a violation of the Home Constructions Contracts Act, thus resulting in a violation of Maine's Unfair Trade Practices Act. SRT counters that once Lowe overspent the project budget due to her change orders, SRT was not required to continue working for nothing. SRT contends that it was relieved of its contractual obligation because of Lowe's anticipatory repudiation of payment, also known as an anticipatory breach. As to the statutory claim, SRT argues that Lowe received full value for all the work performed.

### a. Breach of Contract

The burden of proof in an action for breach of contract is on the plaintiff to demonstrate (1) breach of a material contract term; (2) causation; and (3) damages. *Me. Energy Recovery Co. . v. United Steel Structures, Inc*., 1999 ME 31, ¶ 7, 724 A.2d 1248 (establishing the elements of a claim for breach of contract under Maine law). "An anticipatory repudiation of a contract is a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives." *Wholesale Sand & Gravel v. Decker*, 630 A.2d 710, 711 (Me. 1993) (internal quotations omitted); Restatement (Second) of Contracts § 250 (2022) ; *see* also illus.2 to §250 (a statement that an obligor will be unable to or unwilling to pay may constitute a repudiation). An anticipatory repudiation, also known as an anticipatory breach, occurs before there is any breach by non-performance. Restatement (Second) of Contracts § 253 cmt a. (2022) "Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance." Restatement (Second) of Contracts § 253(2) (2022).

Here, Lowe changed the contract with every change order she made. Lowe stated that she nevertheless expected SRT to finish the job even though she had depleted the budget by making numerous, costly changes to the scope of the project. Lowe refused to pay SRT to continue working, and instead demanded that SRT work for nothing. Lowe then threatened legal action against SRT if it did not comply, and even went so far to ensure SRT knew she was serious by hiring an attorney to send them a notice of claim. Lowe's statements and actions clearly indicate a manifestation of intent to not to pay SRT for any further work. Therefore, Lowe anticipatorily breached the contract, which in turn discharged SRT from its duty to render any further

performance on the project. Lowe has failed to carry her burden of establishing SRT's liability for breach of contract.

### b. Maine's Unfair Trade Practices Act

Under the Home Construction Contracts Act ("HCCA"), "[a]ny home construction contract for more than $3,000 in materials or labor must be in writing and must be signed by both the home construction contractor and the homeowner or lessee." 10 M.R.S. § 1487. Here, the parties did sign a written contract which complies substantially with the HCCA.[4] However, SRT did not reduce all of Lowe's change orders to writing, as is required by the HCCA. 10 M.R.S. § 1488. Nevertheless, the legislative intent behind the HCCA is to combat the problems of "faulty home construction," not to create liability simply because something was omitted from the contract. *see* L.D. 1044 (113th Legis. 1987); 10 M.R.S. § 1487, *Sweet v. Breivogel*, 2019 ME 18, ¶ 21, 201 A.3d 1215. The HCCA does not provide specific remedies, but a violation of the HCAA constitutes *prima facie* evidence of a violation of the Unfair Trade Practices Act, Title 5, chapter 10. *Sweet*, 2019 ME 18, ¶ 21, 201 A.3d 1215; 10 M.R.S. § 1490, Penalties. In order for liability to attach, however, homeowners have the burden to show "they did not receive the value that should have been conferred." *Sweet*, 2019 ME 18, ¶ 21.

Here, Lowe has established a violation of the HCCA (the verbal change orders), which constitutes *prima facia* evidence of a violation of the UTPA. However, Lowe has failed to prove that she did not receive the value that should have been conferred. SRT provided the labor and materials, as Lowe requested, and did so in a workmanlike manner. SRT kept Lowe apprised of the costs. The cost of the work associated with the verbal change orders was fair and reasonable.

---

[4] The parties' mutual failure to check a box selecting arbitration or mediation does not constitute a substantive violation of the HCCA where, as here, no party moved to stay the litigation in favor of arbitration, and both parties participated in mediation as a part of the litigation.

Accordingly, Lowe has failed to satisfy her burden to establish liability under the UTPA. Indeed, by contending that SRT was obligated to work for nothing due to a technical violation—not capturing in writing the change orders she requested—Lowe appears to have misunderstood the purpose and function of the HCCA as it relates to the UTPA.

## III. Conclusion

For the reasons set forth above, the Court concludes that Lowe has failed to establish SRT's liability under either Court I for breach of contract or under Count VIII for violation of Maine's Unfair Trade Practices Act. The Court grants judgment to Defendants.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Judgment for Defendants on the civil docket by a notation incorporating it by reference.

Date:   July 27, 2022

Michael A. Duddy
Judge, Business and Consumer Court

Entered on the docket:  07/28/2022

9

AMANDA LOWE,

      Plaintiff,

  v.

SRT CUSTOM BUILDING, INC.,
JASON M. THERIAULT, and
SHAWN R. THERIAULT,

      Defendants.

)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANTS' MOTION
TO DISMISS

Plaintiff Amanda Lowe ("Plaintiff") filed an eight-count Complaint[1] on June 14, 2021. On June 21, 2021, Defendants SRT Custom Building Inc, LLC., Jason M. Theriault, and Shawn R. Theriault (collectively referred to as "Defendants") filed a joint Motion to Strike and for an Enlargement of Time to File Responsive Pleadings, which Plaintiff timely opposed. All three defendants filed individual Answers and Affirmative Defenses on July 8, 2021. Defendants' Motion to Strike was denied, but their request for an enlargement of time was granted on August 6, 2021 (*O'Neil, J.*).

While the Defendants' June 21, 2021 Motion was pending, they applied to have the action transferred to the Business and Consumer Court on July 16, 2021. The transfer was approved on August 12, 2021 (*Duddy, J.*). A scheduling order was issued on October 4, 2021 following a September 27, 2021 scheduling conference.

---

[1] The eight counts in the Complaint are as follows: Breach of Contract (Count I), Breach of Expressed Warranties (Count II), Breach of Implied Warranties (Count III), Violations of the Home Constructions Contracts Act (Count IV); Constructions Contract (V), Conversion (VI), Uniform Deceptive Trade Practices Act (VII), and Maine Unfair Trade Practices (Count VIII).

This court received notice on November 30, 2021 that the parties had agreed to Alternative Dispute Resolution (ADR). The ADR Conference was held on February 14, 2022, and the parties were unable to come to a resolution.

On February 18, 2022, Defendants electronically filed their Motion to Dismiss pursuant to M.R. Civ. P. 12(b)(6) on the grounds that the Complaint fails to state a claim. Plaintiff filed a Memorandum of Law in Opposition to the Motion on March 2, 2022. Defendants filed a Reply on March 21, 2022 and a Supplement Reply Memorandum on March 29, 2022.

After careful review of Defendants' Motion to Dismiss, the court finds the motion to be untimely. Defendants brought their Motion pursuant to M.R. Civ. P. 12(b)(6). Rule 12(b) of the Maine Rules of Civil Procedure instructs:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: … (6) failure to state a claim upon which relief can be granted …. A motion making any of these defenses *shall be made before pleading if a further pleading is permitted.*

(emphasis added).

While the court recognizes a motion for failure to state the claim may be brought after the pleadings close, such a motion should be brought pursuant under M.R. Civ. P. 12(c), Motion for Judgment on the Pleadings.[2] In the Motion to Dismiss, neither Rule 12(c) nor a request for a judgment on the pleadings is mentioned. Therefore, the court treats the motion as it is presented, as a Rule 12(b)(6) motion. As a Rule 12(b)(6) Motion, Defendants' Motion to Dismiss is untimely. Due to

---

[2] "A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by a *motion for judgment on the pleadings*, or at the trial on the merits." M.R. Civ. P. 12(h)(2) (emphasis added).

the Defendants' having already filed pleadings, Defendants' Motion to Dismiss is DENIED for being untimely.

In accordance with the Scheduling Order, the deadlines for discovery, January 27, 2022, and the exchange of witness lists, February 11, 2022, passed before this motion was brought. The deadline for filing dispositive motions was on March 27, 2022 and has since passed. Therefore, this action is ready for the trial phase and a pretrial conference shall be scheduled.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order Dismissing Plaintiff's Filing of 32 M.R.S. § 11019 Action on the civil docket by a notation incorporating it by reference.

Date:   April 12, 2022

_____
Michael A. Duddy
Judge, Business and Consumer Court

Entered on the docket:  04/12/2022

3