STATE OF MAINE
ANDROSCOGGIN, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-163

RICHARD ALEXANDER,

Plaintiff

vs.

MICHAEL COTE,
Individually and doing business as
M&M CONSTRUCTION Ent. Inc.
and
M&M CONSTRUCTION

Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DECISION AND JUDGMENT

On September 12, 2019, Plaintiff Richard Alexander (hereafter "Alexander") filed with the

court a ten count complaint against Defendant Michael Cote and M&M Construction (hereafter

"Cote") alleging Violations of the Home Construction Contract Act, 10 M.R.S.A. §§ 1486 et seq.,

Unfair Trade Practices, 5 M.R.S.A. §207 Negligence, Breach of Contract, Breach of Warranty,

Fraudulent Misrepresentation and Conversion. Cote timely answered. Trial on the matter was held on

October 31, 2022, jury waived. At trial, testimony was received from Alexander, Cote, and Mike

Schade of Androscoggin Builders and Maintenance, Plaintiff's designated expert. The following

exhibits were also admitted (Plaintiff's Exhibits hereafter P. Ex. _, and Defense Exhibit hereafter D.

Ex. _):

P. Ex. 1- Demand Letter served upon Cote pursuant to 5 M.R.S.A. §213 and 10 M.R.S.A. §

1486;

P.Ex. 22- Design Drawing;

P. Ex. 23-Contract Dated October 12, 2018 for deck;

1

P. Ex. 24- Contract Dated October 12, 2018 for Addition;

P. Ex. 27a- Check for $9,375.00;

P. Ex. 27b- Check for $8,735.50;

P. Ex. 28- Contract dated January 9, 2019 with Androscoggin Builders;

P. Ex 29- Opinion Letter dated March 13, 2019 by Mike Schade;

P. Ex. 30- Plaintiff's Expert Witness Designation;

P. Ex. 30a- Building design schematic by Mike Schade;

P. Ex. 36- Photograph of Cote's yard sign;

P. Ex. 37- Photographs of work completed by Cote;

P. Ex. 41- Text messages by Cote seeking laborers;

P. Ex. 41a- Photographs of deck as completed by Mike Schade;

P. Ex. 42- Facebook posts by Cote advertising for sale his van;

P. Ex. 43- Facebook posts by Cote advertising for sale his van; and

D. Ex. 1- Labor and material lists by Cote.


Findings of Fact.

Based upon the testimony presented and exhibits admitted, the court makes the following findings of fact-

In the fall of 2018, Alexander made a post on Facebook indicating that he was in search of a contractor to construct at this home at 55 Bailey Avenue in Lewiston a new addition and deck. Cote responded to the post and the two met at Alexander's home to discuss the project. After Cote presented Alexander with some preliminary drawings, Cote presented Alexander with two estimates, one for a 14' x 14' deck and the second for a 24' x 24' addition. ( P. Ex's. 23 and 24). The estimate for the deck

2

was for $5,625.00 and the estimate for the addition was $6,437.50. Both estimates represented Cote was "fully insured". (Id.). Although Cote told Alexander he also drove a school bus part-time, he represented to Alexander that he had a crew, and all of the tools and equipment to do the job. Relying on those representations, both estimates were signed by Alexander and Cote on October 17, 2018. (Id.) Both estimates contained a payment schedule. (Id.) The estimate for the deck required payments of $2937.50 at time of signing and $1468.75 upon completion of supports and framing. (Id.) The estimate for the addition required payments of $6437.50 at time of signing, $3218.75 upon completion of supports and framing, and $3218.75 upon completion of all work. (Id.) Alexander paid to Cote $9375.00 at time of signing of the two estimates, being the total of both estimates due at that time. (P.Ex. 27a).

The court finds that the two estimates signed by the parties on October 17, 2018 accurately reflected the price and scope of work to be completed by Cote. Both contracts however failed to comply with the Home Construction Contract Act (HCCA) and failed to contain several required provisions. Specifically, both contracts failed to contain provisions setting forth the work dates, required warranty language, dispute resolution alternatives, change order requirements, and required warnings and notices regarding consumer protection. (See 10 M.R.S.A. §1487). And both contracts violated the initial down payment limitation of 1/3 of the total contract price. (See 10 M.R.S.A. §1487(5)). As will be discussed herein, the violations in these two contracts are material to the dispute evolving between the parties, and finds that the two contracts violate the HCCA. Accordingly, the court finds that Cote has violated the Unfair Trade Practices Act (UTPA), 5 M.R.S.A. 207. (See 10 M.R.S.A. §1490; see also *State v. Breivogel,* 2019 ME 18, ¶21.

3

Although the contracts were silent regarding work dates and warranty, from the testimony, the court finds that the parties mutually contemplated the work would be completed in a reasonable time, in a generally skillful manner up to customary building standards.

After the contracts were signed, Cote had difficulty lining up laborers to assist him to do the job. On October 31, 2018 and November 7, 2018, Cote made posts on Facebook soliciting workers. (P.Ex. 41). When Cote did start work on the project, the only help he had was an older gentleman, who soon quit, and then later Cote's daughter worked some on the project. Seeing that work was being delayed, Alexander gave Cote the names of a couple men he knew who had done some work in the neighborhood. Cote's inability to hire workers delayed the project, and also revealed he had misrepresented that he had a crew and could timely complete the project.

The project was also delayed by some code compliance issues. Although the evidence was not particularly clear, the court infers that a setback issue led to an alteration of the addition portion of the project. Cote also testified that the local code enforcement officer had imposed more stringent requirements for the depth the concrete piers had to be buried in the ground. Cote altered the scope of work for the addition, likely incurring more cost, but no change orders or amendments to the contracts were signed. Cote did however request Alexander remit more money. On November 16, 2018, Alexander tendered a check in the amount of $8,735.50, which was applied towards both contract projects. (P.Ex's. 23, 24, 27a, and 27b).

As the days went by with work advancing slowly, Alexander became very concerned about the quality of the work that had been performed. After speaking with individuals who had some experience in the field, Alexander was concerned that the piers were installed unevenly, blocks of wood or shims were required for leveling, there were no attachment bolts in the piers, and the structure was not square or level. Alexander was also concerned that Cote was rarely on-site, and the laborers,

4

who were not well skilled, were working unsupervised. Alexander presented his concerns to Cote, which Cote did not take well. Alexander also requested Cote provide him with proof of insurance, which Cote never produced. Alexander and Cote argued a number of times over these issues.[1] On the final occasion when Alexander again requested Cote provide proof of insurance, Alexander removed from his yard Cote's yard-sign which advertised he was "fully insured". Cote responded "I'm done", and packed all of his tools and equipment into his van, and left, never to return to the site. The work was never completed.

Alexander attempted to contact Cote in the following days, but Cote never responded. Alexander then asked Mike Schade to inspect the work Cote had completed on the addition. Schade found a number of deficiencies with Cote's work. Those deficiencies included the piers not being set correctly, and without the usual attachment bolts; the piers were uneven requiring shimming; the concrete used in the piers was cracking; the 2x10's laying on the piers were not properly attached; the box sill was not correctly positioned; the floor sheathing was incorrectly set on the joists and not square with the joists or properly nailed; improper floor insulation was used; and the entire structure was not square.(P.Ex.29). Based on Schade's opinion the court finds that the work completed by Cote was not constructed according to usual building standards, and that other than material that could be salvaged, the work Cote completed had no value. All of Cote's had to be removed.

Alexander hired Schade and Androscoggin Builders and Maintenance to remove and disassemble all of the work Cote had improperly perfoermed at the cost of $2874.00. Alexander also hired Schade to install a new deck at the cost of $12,224.00. The addition that Alexander had originally wanted to be built was foregone due to cost. As for the materials salvaged, Schade

[1] Both parties testified the other made threatening comments or gestures. The court cannot conclude if such threats were actually made, but based on the evidence can conclude the parties working relationship had deteriorated and became unmanageable.

5

recommended to Alexander he try to sell it on the internet, and ask for $1,500.00 and see what he received for offers. Alexander was able to sell the materials salvaged from Cote's work for $1,200.00, which the court finds reasonable.

Conclusions.

An express contract requires intent to enter a contract, mutual assent, sufficiently definite terms, and consideration. Horton and McGehee, *Maine Civil Remedies*, §10-3(4th ed. 2004). As previously indicated, the court finds that the parties entered two binding contracts, one requiring Cote to construct a 14' x 14' deck in exchange for $5625.00 and the other requiring Cote to construct a 24'x 24' addition in exchange for $12,625.00. The two contracts totaled $18,250.00. By payments made October 17, 2018 and November 16, 2018, Alexander paid $18,110.50 towards the two contracts.

The court further finds that Cote breached the contract by not only not performing the work in a timely manner, but more importantly, he breached by failing to complete the construction according to usual building standards. Although the two contracts did not have the express warranty provisions required by the HCCA, 10 M.R.S.A. §1487(7), a warranty was none the less implied. The court finds that Cote breached the warranty he owed, by failing to perform construction according to usual building standards.

Alexander also alleges fraud. The elements of fraud include: a false representation; of a material fact; with knowledge of its falsity or in reckless disregard of whether it is true or false; for the purpose of inducing another to act or to refrain from acting; and the plaintiff justifiably relies upon the representation. Cote made a number of representations, the most concerning being that he had the

6

experience and crew to do the job, and that he was insured. Notwithstanding Cote's experience, he did not have a crew of laborers to perform the job. And despite showing on his contract and yard-sign that he was "fully insured", he never produced to Alexander proof that he in fact was insured. These are both material facts for a building contract that Alexander was justified in relying upon, and did in fact rely upon when entering the contracts. Cote did not have a sufficient or competent crew to complete the job, and never produced proof of insurance. The court finds Cote misrepresented those facts and that Alexander has proven the elements of fraud.

Accordingly, Alexander has proven by a preponderance of the evidence his claims for breach of contract, Counts 6 and 7, breach of warranty, Count 8, and Fraudulent Misrepresentation, Count 9. As previously discussed, the contracts that Cote prepared and had Alexander sign were grossly divergent from what is required by the HCCA. Neither contract set work dates, provided the required express warranty, or alternatives for dispute resolution. A problem with this project were delays, which may have been obviated had the contracts clearly and conspicuously specified the dates when the work would be completed. The contracts did not contain the required change order language. Yet Cote argues the scope of work and price had to be changed. Following proper change order requirements may have prevented deterioration of the parties working relationship. And the contracts failed to contain the required limitation of down payments exceeding 1/3 of the contract price. Cote required Alexander to pay $9,375 at time of signing, over one half the total contract price.

The disputes raised in this lawsuit revolve around the scope and price of work, that it be completed in a timely manner, and in accordance with usual building standards. The contracts were silent to many of these issues. This is precisely the type of case the HCCA is intended to address. The court finds that Cote violated the HCCA, 10 M.R.S.A. §1487, and accordingly violated the Unfair Trade Practices Act. (10 M.R.S.A. §1490; 5 M.R.S.A. §207). The court further finds that Alexander

satisfied the notice and procedural requirements of 5 M.R.S.A. §213, and will be granted attorney fees.

In summary, judgment will be granted for Alexander on: Counts 1 and 2, violation of the HCCA; on Count 3, violation of the Unfair Trade Practices Act; on Counts 6 and 7, Breach of Contract; on Count 8, Breach of Warranty; and on Count 9, Fraudulent Misrepresentation.
The court declines to issue judgment to Plaintiff on Counts 4 and 5, Negligence or on Count 10, Conversion.


Damages.

Alexander paid to Cote a total of $18,110.50 on the two contracts. Other than salvage, the work Cote completed had no value. In fact, to remove and disassemble the work Cote did cost Alexander $2,874. Alexander took reasonable efforts to sell the salvaged material and netted $1,200.00. Alexander is entitled to recover all of the money he paid to Cote, $18,110.50, plus the cost to remove the Cote's work, $2,874.00, less the $1,200 he received selling the salvaged materials. The net amount of damages Alexander is entitled to recover totals $19,784.50

Pursuant to 5 M.R.S.A. §207 and §213(2) Alexander is entitled to recover from Cote attorney fees and cost. The court has carefully reviewed the fee affidavit submitted by Alexanders counsel. The claims made and damages sought in this case were the type inextricably intertwined with the claims pursuant to the HCCA and the UTPA. It is impossible to extract the fees incurred for prosecution of the HCCA and UTPA claims from the breach of contract and warranty claims. Accordingly, attorney fees and costs of $8,487.69 will also be awarded.

The Order is:

Judgment for Plaintiff Richard Alexander and against Defendant Michael Cote, individually and doing business as M&M Construction Ent. Inc, on Counts 1, 2, 3, 6,7, 8, and 9 in the amount of $19,784.50, plus attorney fees of $8,487.69, for a total judgment of $28,272.19, plus pre-judgment and post-judgment interest and costs as allowed by law.

Judgment for Defendant Michael Cote, individually and doing business as M&M Construction Ent. Inc on Counts 4, 5 and 10.

The Clerk is directed to enter this order and judgment into the docket by reference pursuant to M.R.Civ.P. 79(a).

Dated: November 14, 2022

Justice, Superior Court